# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MARK CALERO,

    Plaintiff,

    v.                                                                                No. 1:20-cv-01015-KWR-KK

CORECIVIC of TENNESSEE, LLC.,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION TO DISMISS

**THIS MATTER** comes before the Court upon Defendant CoreCivic of Tennessee's Motion to Dismiss for Failure to State a Claim[1], filed on October 12, 2020. **Doc. 7**. Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendant's motion is well-taken and therefore is **GRANTED**.

### BACKGROUND

This case arises from Plaintiff's alleged wrongful termination by Defendant from his position as a Detention Officer at Defendant's Torrance County Detention Facility.

Plaintiff was hired by Defendant as a detention officer on August 26, 2019. **Compl., ¶ 7**. The Complaint alleges that as of his last competency rating on March 9, 2019, Defendant stated that Plaintiff was meeting all expectations of his job and indicated that he "should seek promotion when eligible." *Id.*, **¶¶ 8-9**.

---

[1] Plaintiff's Complaint originally identifies CoreCivic, Inc. as the Defendant. The parties filed a stipulation to dismiss and substitute that defendant with Defendant CoreCivic of Tennessee, LLC as the appropriate defendant and Plaintiff's employer. **Doc. 30.** Accordingly, the Court refers to CoreCivic of Tennessee, LLC in this motion to dismiss.

The Complaint alleges that, "on behalf of himself and others employed by [Defendant]," [Plaintiff] began calling and leaving voicemails with HR at the facility, requesting information as to how Defendant intended to respond to and protect its employees from the dangers of COVID-19. *Id.*, ¶ **10**. On May 15, 2020, Plaintiff called in sick to work with allegedly COVID-like symptoms. *Id.*, ¶ **11**. Plaintiff took a COVID test, which came back negative on May 26, 2020. *Id.*, ¶ **12**. The Complaint alleges that, although Plaintiff had not been to the detention facility since calling in sick and was personally unaware of the number of positive COVID cases within the facility for either officers or inmates, he was informed by several fellow officers that COVID numbers were high. *Id.*, ¶ **13**. Plaintiff alleges that on that day, and others thereafter, he attempted multiple times to contact HR by phone and email regarding the facility's COVID safety protocols and plans, leaving "at least" five voicemails. *Id.*, ¶¶ **14-15**.

On June 1, Plaintiff received a telephone call from a supervisor questioning whether he intended to return to work. *Id.*, ¶ **16**. Plaintiff informed his supervisor of his COVID-related inquiries to HR and was purportedly informed that his supervisor was present with HR and that someone would get back to him shortly. *Id.*, ¶ **17**. The Complaint alleges that no one returned his calls or emails. *Id.*, ¶ **18**.

**Events Leading to Plaintiff's Termination**

Plaintiff is a member of the New Mexico Civil Guard, "a private group supporting the rule of law and the 2nd Amendment." *Id.*, ¶ **19**. On June 1st, 2020, Plaintiff attended a protest event in Albuquerque, New Mexico with members of the New Mexico Civil Guard. *Id.*, ¶ **20**. The members, including Plaintiff, openly carried firearms at the protest. *Id.*, ¶ **21**. Plaintiff was photographed carrying a gun by a local news outlet, which published the photograph online in a news article, allegedly without Plaintiff's permission. *Id.*, ¶¶ **23-24, 32**.

On June 4th, 2020, Plaintiff was issued a "Facility Employee Problem Solving Notice," when a supervisor saw the article and photograph of Plaintiff. *Id.*, ¶ 25. The Notice provided the following:

> On 6/3/2020, while reviewing social media, Shift Supervisor [redacted] Cole, discovered a new story on www.kunm.org, regarding a group of armed militia who were present at a protest occurring on 6/1/2020 in Albuquerque, NM. A photograph of you holding an assault rifle is attached to this story and demonstrates your presence and participation with a group calling themselves the New Mexico Civil Guard.
>
> Your active engagement with an organization that promotes the use of deadly force by private citizens against those engaged in peaceful protest undermines our confidence in your commitment to follow policy and procedure and in your ability to conduct yourself appropriately and with necessary restraint in the performance of your duties giving appropriate deference to the rights and interests of the detainees to which you are responsible for overseeing: For these reasons your employment with CoreCivic is terminated.

**Doc. 1-1, Ex. 3.**

Plaintiff alleges that neither he nor any members of the New Mexico Civil Guard threatened anyone at the protest and that he was not provided an opportunity to discuss or explain the photograph and the circumstances of his attendance to a supervisor. **Compl., ¶¶ 22, 28, 30**. The Complaint asserts, among other things, that Plaintiff was wrongfully terminated by Defendant without the opportunity to seek redress, for behavior assumed to be against company policy but without a proper investigation by his supervisors. *Id*, **¶ 33.** Plaintiff alleges that his wrongful termination was in fact in retaliation for his efforts to identify what COVID-19 safety measures would be enacted for his and others' safety. *Id.*, **¶ 34**.

Plaintiff filed this case asserting the following claims against Defendant: wrongful termination in violation of public policy (Count I); breach of contract (Count II); breach of the covenant of good faith and fair dealing (Count III); and "malicious interference with employment/prima facie tort" (Count IV). Defendant moves for dismissal of all counts. **Doc. 7.**

**Legal Standard**

**Rule 12(b)(6) Motion to Dismiss**

Rule 12(b)(6) permits the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). To survive a motion to dismiss, the Complaint must have sufficient factual matter that if true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). As such, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). All well-pleaded factual allegations are "viewed in the light most favorable to the nonmoving party." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014). In ruling on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility lies somewhere between possibility and probability; a complaint must establish more than a mere possibility that the defendant acted unlawfully. *Id.* (citing *Twombly*, 550 U.S. at 556); see also *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."). "This requirement of plausibility serves not only to weed out claims that do not

(in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). The degree of specificity "depends on context". *Id*. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## DISCUSSION

Defendant argues that Plaintiff failed to assert sufficient factual allegations on all counts. The Court agrees.

### I. <u>Wrongful Termination in Violation of Public Policy (Count I)</u>.

Plaintiff alleges that he was wrongfully terminated in retaliation "…for his continued attempts to identify what actions would be taken by [Defendant] with regard to his health and safety, as well as the health and safety of others during the COVIC-19 pandemic." **Compl., ¶¶ 34, 37.** Defendant has stated, and Plaintiff has not contested, that he was an at-will employee. Thus, for the purposes of the motion, the Court considers Plaintiff an at-will employee.

#### <u>The Law Regarding At-Will Termination</u>

In New Mexico, "Generally, either an employee or an employer may terminate an at-will employment contract at any time, for any reason, without liability." *Melnick v. State Farm Mut. Auto. Ins. Co.*, 1988-NMSC-012, ¶ 14, 106 N.M. 726, 730, 749 P.2d 1105, 1109. New Mexico recognizes two exceptions to this general rule: "(1) wrongful discharge in violation of public policy (retaliatory discharge); [and] (2) implied contract that restricts the employer's power to discharge…" *Id*. at ¶ 14, 106 N.M. at 730, 749 P.2d at 1109. The tort of wrongful discharge is "a narrow exception to the rule that an at-will employee may be discharged with or without cause." *Shovelin v. Cent. New Mexico Elec. Co-op., Inc.*, 1993-NMSC-015, ¶ 24, 115 N.M. 293, 303, 850

P.2d 996, 1006. Here, the Complaint claims that Plaintiff's discharge was against public policy in New Mexico, thereby invoking that exception to the rule. *Id.*, ¶ **39.**

Defendant argues that Plaintiff failed to allege facts supporting an exception to the general rule of employment at-will because he failed to identify a public policy that Defendant allegedly violated in terminating his employment, instead asserting that he was dismissed in retaliation for his questioning of Defendant's COVID-19 safety procedures. **Doc. 7 at 8.**

Plaintiff contends that the "public policy exception [to terminable at-will employment] is broader than Defendants [sic]" imply, and that such public policies may be evinced in "legislative or judicial statements." **Doc. 13 at 4.** Citing case law on how courts evaluate whether a public policy exists, case law which also conforms to Defendant's interpretation of the law, Plaintiff's Response states that he was wrongfully discharged against public interest in two respects: (1) For "blowing the whistle regarding measures taken or not taken by the Defendant to protect employees against COVID-19…" and (2) based upon the United States' "long standing" support of peaceful protests and the right to participate without being retaliated against by an employer. *Id.* **at 5.**

The Court notes, however, that Plaintiff made no such allegation in his Complaint. Rather, Plaintiff specified that it was his questioning of Defendant's COVID-19 safety practices and his armed attendance at a protest event which led to his purportedly wrongful termination. **Compl., ¶¶ 33-34; Doc. 13 at 5** ("Defendant retaliated against the Plaintiff through termination for his involvement in a protest outside of his work hours and in no way connected to his employment."). Fatal to Plaintiff's claim, he has not identified, in either his Complaint or in his Response in Opposition to the Motion to Dismiss, a specific public policy that prohibits Defendant from terminating his employment under the facts as alleged in the Complaint. *Shovelin v. Cent. New Mexico Elec. Co-op., Inc.*, 1993-NMSC-015, ¶ 25-26, 115 N.M. 293, 303-04, 850 P.2d 996, 1006-

07. ("The linchpin of a cause of action for retaliatory discharge is whether by discharging the complaining employee the employer violated a "clear mandate of public policy… '[U]nless an employee at will identifies a specific expression of public policy, he may be discharged with or without cause.' ") (internal citation omitted).

Plaintiff's own citation to case law stands against his position. Plaintiff proffers *Sherrill v. Farmers Ins. Exch.* (2016-NMCA-056, ¶ 18, 374 P.3d 723, 729) for the rules relating to assess "whether a public policy exists to pursue a wrongful discharge." **Doc. 13 at 5.** A careful reading of *Sherrill*, however, provides further support for dismissal of Plaintiff's case:

> In the absence of a clearly mandated public policy, the employer retains the right to terminate workers at will. The Illinois Supreme Court discussed the importance of requiring retaliatory discharge claims to rest on well-recognized and clear public policies:
> Any effort to evaluate the public policy exception with generalized concepts of fairness and justice will result in an elimination of the at-will doctrine itself. Further, generalized expressions of public policy fail to provide essential notice to employers. The phrase 'clearly mandated public policy' implies that the policy will be recognizable simply because it is clear. An employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations....
> Similarly, in New Mexico, when an employee is discharged, contrary to a clear mandate of public policy, that employee has a cause of action for retaliatory discharge.

*Sherrill v. Farmers Ins. Exch.*, 2016-NMCA-056, ¶ 16, 374 P.3d 723, 728–29 (internal citation omitted).

Accordingly, even accepting Plaintiff's allegations in the Complaint as true, the Court agrees with Defendant that Plaintiff has not identified any specific New Mexico public policy that Defendant has purportedly violated, nor cited to applicable statutory or legislative sources creating an exception to the at-will termination rule that would prevent dismissal of his claim. The Court finds Plaintiff's public policy arguments unconvincing. **Doc. 13 at 3-4.** Therefore, the Court dismisses Plaintiff's claim for wrongful termination (Count I).

## II. Breach of Contract (Count II) and Breach of Covenant of Good Faith and Fair Dealing (Count III).[2]

Plaintiff's Complaint asserts a breach of an implied contract claim and a breach of the covenant of good faith and fair dealing "…in its employment contract with Plaintiff when they discharged him for reasons other than his performance or conduct, and for reasons contrary to public policy." **Compl., ¶¶ 43, 48.** Defendant moves to dismiss these claims on the basis that Plaintiff failed to "allege any facts from which the Court could reasonably infer that [Defendant] made any representations or engaged in any conduct that could have created a reasonable expectation on Plaintiff's part that [Defendant] could only fire him for cause" and because New Mexico has declined to recognize a cause of action for breach of implied covenant of good faith and fair dealing in at-will employment arrangements. **Doc. 7 at 10-12**.

### The Law Regarding Breach of an Implied Contract

In *Hartbarger v. Frank Paxton Co*. (1993-NMSC-029, 115 N.M. 665, 857 P.2d 776), the Supreme Court of New Mexico outlined the requirements for demonstrating creation of an implied contract in an at-will employment relationship, such that an employee could reasonably expect to be terminated only for cause:

> *To create an implied contract, the offer or promise must be sufficiently explicit to give rise to reasonable expectations.* The at-will presumption that the employee has no reasonable expectation of continued employment applies only to a single term of an employment relationship—that of the employer's unabridged right to terminate the employee. The right to terminate is the only provision of an employment relationship that is challenged in a case such as the one at bar, where the employee claims that the employer promised that the employee would be discharged only for good cause. In recognizing the so-called "implied employment contract," we actually have recognized only that an implied-in-fact contract term limiting the employer's right to terminate at will may modify the underlying employment relationship. In examining implied employment contract cases, we always have required that the *promise* that is claimed to have altered the presumed at-will term *be sufficiently explicit* to give rise to reasonable expectations of

---
[2] Plaintiff combines his arguments for these two Counts in his Response to the Motion to Dismiss. The Court therefore addresses them together.

> termination for good cause only…An employer creates expectations by establishing policies or making promises. An implied contract is created only where an employer creates a reasonable expectation. The reasonableness of expectations is measured by just how definite, specific, or explicit has been the representation or conduct relied upon.

*Hartbarger v. Frank Paxton Co.*, 1993-NMSC-029, ¶¶ 13-14, 115 N.M. 665, 672, 857 P.2d 776, 783 (emphasis in original) (internal citations omitted).

Defendant argues that Plaintiff's Complaint merely asserts that he received a good evaluation and was encouraged to seek promotion when eligible, and that this is insufficient basis to demonstrate creation of an implied contract and reasonable expectation that Plaintiff would only be fired for cause. **Doc. 7 at 11;** *See Garrity v. Overland Sheepskin Co. of Taos*, 1996-NMSC-032, ¶ 10, 121 N.M. 710, 713, 917 P.2d 1382, 1385 (internal citation and quotations omitted) ("… [A] vague impression or general feeling of continued employment is not sufficient to create an employment contract…Courts have allowed an exception to the at-will employment rule when there is an implied contract arising out of an employer's promise not to fire an employee except for just cause. However, we will not find an implied contract for cases in which the alleged promise by the employer [is] not sufficiently explicit.").

Plaintiff's Response, which focuses almost exclusively on its allegations under breach of covenant of good faith and fair dealing, does not dispute Defendants arguments or the law. Plaintiff cites case law for the proposition that "Essentially, the implied covenant of good faith and fair dealing helps ensure that both parties receive the benefit of their respective bargains. The concept of the implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement." **Doc. 13 at 5.** Plaintiff suggest that he has sufficiently demonstrated "genuine issues of material fact" relating to his wrongful termination such that dismissal must be denied. *Id.* **at 6.** Plaintiff then recites "several

exceptions" to the general rule that at-will employees may be dismissed at any time. *Id*. In making his argument, Plaintiff quotes the New Mexico Supreme Court in *Melnick* for the exceptions to the general rule, *including that New Mexico does not recognize a cause of action for contractual breach of an implied covenant of good faith and fair dealing*. Melnick v. State Farm Mut. Auto. Ins. Co., 1988-NMSC-012, ¶ 14, 106 N.M. 726, 730, 749 P.2d 1105, 1109. The Court rejects Plaintiff's arguments as vague and conclusory at best. Accepting the factual allegations in the Complaint as true, the Court cannot construe that Defendant made any promises or created a reasonable expectation that Plaintiff could only be fired for cause. Certainly, the fact that he was allegedly employed for ten months and received a positive evaluation is not demonstrative of an exception to the general rule permitting termination of at-will employment at any time. **Compl., ¶ 42.** Accordingly, the Court dismisses Plaintiff's claims for breach of contract (Count II) and breach of the covenant of good faith and fair dealing (Count III).

IV. <u>**"Malicious Interference with Employment/Prima Facie Tort" (Count IV)**</u>**.**

Plaintiff's fourth and final claim for "malicious interference with employment/prima facie tort" which repeats that Plaintiff was removed purportedly to "hide Defendant's bad acts and lack of proper COVID safety measures " is similarly without merit[3]. **Compl., ¶¶ 52-53.** Defendant argues that Plaintiff failed to plead the requisite elements of a prima facie tort claim. **Doc. 7 at 12-13.** The Court agrees.

### Plaintiff Fails to Plead the Requisite Elements of a Prima Facie Tort

"The theory underlying prima facie tort is that a party that intends to cause injury to another should be liable for that injury, if the conduct is generally culpable and not justifiable under the

---

[3] In its Motion to Dismiss, Defendant is uncertain as to what exactly Plaintiff's claim is and, therefore, addresses both intentional interference with contract and prima facie tort. In its Response, Plaintiff only discusses prima facie tort. The Court therefore limits its discussion to prima facie tort.

10

circumstances." *Schmitz v. Smentowski*, 1990-NMSC-002, ¶ 37, 109 N.M. 386, 394, 785 P.2d 726, 734. The elements of a prima facie tort are: (1) An intentional, lawful act by defendant; (2) An intent to injure the plaintiff; (3) Injury to plaintiff, and (4) The absence of justification or insufficient justification for the defendant's acts. *Id*. New Mexico courts apply a balancing test to determine liability under a prima facie tort claim. *Hagebak v. Stone*, 2003-NMCA-007, ¶ 25, 133 N.M. 75, 82–83, 61 P.3d 201, 208–09. ("The activity complained of must be balanced against its justification and the severity of the injury, weighing: (1) the injury; (2) the culpable character of the conduct; and (3) whether the conduct is unjustifiable under the circumstances.") (internal citation omitted).

Defendant argues that Plaintiff's Complaint fails to allege that Defendant terminated his employment or took other against him with the intent to injure him. **Doc. 7 at 14.** In his Response, Plaintiff recites the elements of a prima facie tort; argues that, "While a tort-feasor must act with the intent to cause injury, and without justification or sufficient justification, it 'need not be shown that the act was solely intended to injure plaintiff'"; and asserts generally that, "The Complaint more than satisfies the pleading standard for New Mexico…" **Doc. 13 at 7-8.**

With respect to the element of intent, the New Mexico Supreme Court specified that "Plaintiffs bear a heavy burden to establish the intent to injure." *Lexington Ins. Co. v. Rummel*, 1997-NMSC-043, ¶ 12, 123 N.M. 774, 123, 945 P.2d 992, 995. The Court explained that "Intent to injure is distinct from intent to commit the act which results in injury…The plaintiff must produce more than a showing that injury is a natural and foreseeable consequence of the act.) *Id.*, ¶ 14, 123 N.M. at 123, 945 P.2d at 995. Moreover, the New Mexico Supreme Court limited the scope of application of the tort:

> In recognizing prima facie tort, this Court emphasized the importance of limiting the cause of action. Prima facie tort was not intended to provide a remedy for every

11

intentionally caused harm. Rather, the cause of action provides a remedy for acts committed with an intent to injure the plaintiff and without justification. Therefore, balancing the malicious intent of the defendant against both the justifications for the injurious act offered by the defendant and the severity of the injury is a necessary step in assessing whether a prima facie tort has been committed. *Where there is no evidence of intent to injure, there is no need to proceed with the balancing test.*

*Id*. (internal citation omitted) (emphasis added).

Here, the Court concludes that Plaintiff has not adequately alleged the requisite elements of a prima facie tort. Plaintiff's general statement that he "stand[s] ready and willing to amend their [sic] Complaint to provide a pleading that lays out the claim more conclusively for the Defendant" is incorrect procedure to seek the Court's permission to amend the Complaint. **Doc. 13 at 3;** *See Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir. 2021) ("We have long held that bare requests for leave to amend do not rise to the status of a motion and do not put the issue before the district court."). Accordingly, the Court dismisses Plaintiff's claim for "malicious interference with employment/prima facie tort" (Count IV).

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is **GRANTED.**

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Dismiss **(Doc. 7)** is hereby **GRANTED** for the reasons described in this Memorandum Opinion and Order.

A separate judgment will be entered.

_____
**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**